UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIGGE CRANE & RIGGING CO., | Case No. 25-cv-07460-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| AGRI-SYSTEMS, et al., | Re: Dkt. Nos. 19, 21 |
| Defendants. | |

This is a contract dispute.  Both Defendants, Agri-Systems d/b/a ASI Industrial and Tokio Marine America Insurance Company filed motions to dismiss, which were heard before this Court on February 5, 2026.  Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** both motions, for the following reasons.

I.      **BACKGROUND**[1]

Plaintiff Bigge Crane and Rigging Co. ("Bigge") is a California corporation headquartered in San Leandro, California.  Compl. ¶ 1.  Defendant Agri-Systems dba ASI Industrial ("ASI") is a Montana corporation headquartered in Billings, Montana.  Compl. ¶ 2; Notice of Removal ¶ 7. Defendant Tokio Marine America Insurance Company ("Tokio Marine") is a New York corporation headquartered in New York, New York.  Compl. ¶ 3; Notice of Removal ¶ 8.

---

[1] "On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff." *Detwiler v. MidColumbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025) (citation omitted).

United States District Court
Northern District of California

**A.    The Lease**

On April 17, 2024, Bigge and ASI entered into a Bare Equipment Lease Agreement (the "Lease") for a Liebherr LR1130 crawler crane.  Compl. ¶ 7; *see also id.*, Ex. A.  The Lease set a monthly rental rate of $23,000, plus freight and personal property tax reimbursement.  Compl. ¶ 8. Under the Lease, ASI was required to procure $1.5 million in property insurance for the crane, name Bigge as an additional insured, and list Bigge as a loss payee.  Compl. ¶¶ 13-14.  The Lease further provided that ASI assumed responsibility for repair or replacement of the crane in the event of damage and that rent would continue to accrue until Bigge was fully compensated for any loss in the event of damage.  Compl. ¶ 33.

**B.    The Damage and Insurance Claim**

While on rent to ASI, the crane was damaged during a severe weather event in Houston commonly referred to as the "Houston Derecho," which brought winds of up to 100 miles per hour and multiple tornadoes.  Compl. ¶¶ 11-12.  Following the weather event and damage, ASI submitted an insurance claim to its insurer, Tokio Marine.  Compl. ¶ 32.  Tokio Marine paid ASI $1.25 million under the insurance policy (the "Policy"), which did not include Bigge as an additional insured or loss payee.  Compl. ¶¶ 16, 32.  ASI remitted only $640,708.44 to Bigge from the Tokio Marine payout and retained the remaining $609,291.56.  Compl. ¶¶ 32, 49.

Further, ASI missed at least two months of rent and failed to pay other charges due under the Lease.  Compl. ¶¶ 17-18, 34.  The Lease contains a "continuing rent" clause providing that rent must accrue until Bigge has been fully compensated for the crane loss, and Bigge claims further sums therefore remain outstanding.  Compl. ¶¶ 33-34.

**C.    Bigge's Claims and Requested Relief**

On August 6, 2025, Bigge filed its Complaint in the Superior Court of California, County of Alameda.  *See* Notice of Removal ¶ 1; *see also* Compl.  Tokio Marine removed the case to this Court on September 3, 2025.  The Complaint asserts nine causes of action:

- (1) breach of written contract;
- (2) common count;
- (3) account stated;

United States District Court
Northern District of California

- (4) conversion;
- (5) breach of fiduciary duty;
- (6) intentional interference with contract;
- (7) negligent interference with contract;
- (8) violation of Penal Code § 496; and
- (9) declaratory relief.

Compl. ¶¶ 19-87.  Bigge advances all nine causes of action against ASI, and Bigge includes Tokio Marine only in the final cause of action for declaratory relief.

## II.     DISCUSSION

Both ASI and Tokio Marine separately move to dismiss.  Dkt. Nos. 19 & 21.  The Court elects to consider ASI's motion first.

### A.      ASI's Partial Motion to Dismiss

ASI moves to dismiss counts three through eight alleged against it, leaving count one, breach of contract; count two, common count; and count nine, seeking declaratory relief, to proceed through litigation in this case.  Dkt. No. 21.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-

United States District Court
Northern District of California

3

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003). If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

ASI argues that counts three through eight all fail on their own and as a matter of law, but ASI additionally argues that counts three through seven fail under California's economic loss doctrine. *See* Dkt. No. 21 at 17-19. The Court agrees that the economic loss doctrine applies to bar counts four through seven and discusses that issue before turning to discuss the sufficiency of pleading for counts three and eight separately.

### 1. Economic Loss Doctrine

California's economic loss doctrine bars tort claims that seek nothing more than contract damages. The California Supreme Court describes, "[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage. . . . [T]he rule functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (citation omitted). "Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from – or are not independent of – the parties' underlying contracts." *Sheen*, 12 Cal. 5th at 923. California courts reason that "the economic loss rule prevents the law of contract and the

law of tort from dissolving into one another" and "requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (brackets and internal quotation marks omitted); *see also J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (describing the economic loss rule). If every breach of contract gave rise to damages distinct from those afforded under contract law, the economic loss rule "would be meaningless, as would the statutory distinction between tort and contract remedies." *Robinson Helicopter*, 34 Cal. 4th at 990. The rule applies when "the parties are in contractual privity and the plaintiff's claim arises from the contract (in other words, the claim is not independent of the contract)." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022) (citing *Sheen*, 12 Cal. 5th at 923). And the rule is particularly strong when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal.4th at 991.

Here, Bigge's effort to portray its contract claims as independent torts fails because every "duty" it identifies arises directly from the Lease provisions it invokes. For example, Bigge relies on alleged duties not to "steal" or "interfere with equitable rights" (count four, conversion), not to "interfere with Bigge's right to receive insurance benefits" (count six, intentional interference; count seven, negligent interference), and not to "violate trust or fiduciary obligations imposed by law" (count 5, breach of fiduciary duty). Dkt. No. 28 at 15-16. But each of the duties Bigge identifies arises directly from obligations imposed on ASI under the Lease, including the requirements to obtain and maintain property insurance naming Bigge as an additional insured and loss payee and to remit any insurance proceeds (Lease at § 10); to operate and maintain the crane safely (Lease at § 6); to indemnify Bigge (Lease at § 9); and to repair or replace the crane if damaged (Lease at § 11). Compl., Ex. A. These are the very contractual performance terms that define the parties' relationship. California law does not permit the transformation of contractual obligations into tort duties. *See Erlich v. Menezes*, 21 Cal. 4th 543, 550-51 (1999); *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1092 (C.D. Cal. 2017). Reframing those same allegations as "conversion," "interference," or "fiduciary" theories of liability does not create a new legal duty or new measure of damages. Rather, Bigge's attempt to reframe its allegations as

United States District Court
Northern District of California

"conversion," "interference," or "fiduciary" theories only serves to conflate tort and contract, which the economic loss doctrine prohibits. *See Sheen*, 12 Cal. 5th at 923 (barring tort claims for monetary losses "when they arise from – or are not independent of – the parties' underlying contracts.").

Bigge identifies only two categories of loss: (1) the alleged $405,781.85 in arrears under the Lease, and (2) the alleged $609,291.56 shortfall in insurance proceeds following Tokio Marine's payment. Every claim in counts four through seven is tethered to one of these two contract-based categories of damages. The conversion claim is confined to the portion of the insurance proceeds Bigge alleges ASI should have remitted – a claim for economic damages arising from the contract. The fiduciary duty claim then recharacterizes those same insurance obligations as fiduciary duties, attempting to create a fiduciary relationship and a cause of action sounding in tort – again seeking recovery of economic damages arising from the contract. And the intentional and negligent interference claims are likewise based entirely on ASI's handling of insurance proceeds that Bigge contends were owed under the Lease – another pair of claims for economic damages arising from the contract.[2] The asserted rights and duties underlying all these causes of action derive from the Lease, not independently. Bigge's additional demands for punitive or treble damages do not change the analysis because such remedies remain derivative, depending entirely on the same obligations and insurance issues governed by the Lease; Bigge offers no authority to the contrary. The economic loss doctrine thus requires Bigge "to recover in contract for purely economic loss due to disappointed expectations, unless [it] can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988.

Bigge asserts that the economic loss rule does not apply here because the physical damage to its crane constitutes harm beyond a broken contractual promise. *See* Dkt. No. 28 at 15 (citing *Dhital v. Nissan North America, Inc.*, 84 Cal. App. 5th 828, 837 (2022)). To this end, Bigge focuses on its allegation that ASI failed to comply with the terms of the Lease by operating the

---

[2] Bigge's claim for negligent interference with contractual relations additionally and separately fails because such a cause of action does not exist at law. *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9-10 (2009) ("California does not recognize a cause of action for negligent interference with contractual relations").

leased crane in a hazardous manner, subjecting the equipment to improper use during a very high wind event. Compl. ¶ 27. Bigge's argument fails on relatively straightforward reasoning: Bigge's contention that ASI caused damage beyond a broken contract promise itself relies on the contents of the contract. The crane is the subject of the Lease, and its damage is precisely the contractual risk the parties allocated through the insurance and indemnity provisions. The breach of those insurance and indemnity provisions remains live for adjudication in this lawsuit. The only losses Bigge seeks to recover are economic, consisting of the purported unpaid rent and the alleged shortfall in insurance proceeds, not any independent injury to person or property. Bigge does not allege a property-damage tort arising from the crane accident, and the allegations regarding damage to the crane serve only as background to its claim for breach of contract. Accordingly, the "physical damage" exception does not apply. *See Dhital*, 84 Cal. App. 5th at 837. Bigge fails to establish harm above and beyond a broken contractual promise. Therefore, the economic loss rule bars Bigge's claims sounding in tort, including counts four through seven.

### 2.    Count Three – Account Stated

An "account stated" is "an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir. 1989); *see also Trafton v. Youngblood*, 69 Cal. 2d 17, 25 (1968). An account stated arises only when the parties agree on a final balance that replaces the prior obligation. *Martini E Ricci Iamino S.P.A. v. W. Fresh Mktg. Servs.*, 54 F. Supp. 3d 1094, 1107 (E.D. Cal. 2014) (citing *Gardner v. Watson*, 170 Cal. 570, 574 (1915)); *see also Leighton v. Forster*, 8 Cal. App. 5th 467, 491 (2017). "The elements of an account stated are: '(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due.' " *Martini E Ricci*, 54 F. Supp. 3d at 1107 (quoting *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969)). A claim "predicated on an express contract cannot be the basis of an account stated," and courts routinely reject efforts to repackage a contractual debt as one. *Martini E Ricci*,

United States District Court
Northern District of California

United States District Court
Northern District of California

54 F. Supp. 3d at 1106; *see also Nat'l Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*, No. SACV 13-0873-DOC, 2013 WL 6190591, at *3-4 (C.D. Cal. Nov. 24, 2013).

Bigge's claim for account stated fails on the most fundamental requirements. Bigge alleges none of the elements necessary to form a new agreement. The Complaint identifies no written statement of account, no assent by ASI, and no new promise to pay beyond the Lease. The Complaint instead merely repeats the same obligation already alleged in count one for breach of contract, asserting that "ASI agreed to pay Bigge this balance." Compl. ¶¶ 42-43. But the Complaint contains no other agreement – read in context, ASI's "agreement" to pay refers only to ASI's original lease obligations, not a subsequent assent to a reconciled sum. *Id.* Without a new promise separate from the Lease, there can be no claim for account stated as a matter of law. *Martini E Ricci*, 54 F. Supp. 3d at 1106-07.

Bigge cites *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597 (1969), to argue that assent to a stated balance may be implied without an express agreement. Dkt. No. 28 at 3. The matter of *Zinn* involved an undisputed statement and assent where the employer issued a check fixing the amount due, and the employee's confirmation of that sum created a new and independent agreement. *Id.*, 271 Cal. App. 2d at 600. Bigge's allegations here describe a continuing dispute under the Lease involving missed rent, insurance obligations, and withheld proceeds, not any meeting of the minds on a new fixed balance. Compl. ¶¶ 29, 32, 34, 81. Bigge's reliance on *Zinn* is thus misplaced. Because the alleged $405,781.85 Bigge seeks under this claim arises entirely from the Lease and not from a separate agreement, California law bars pleading it as an account stated. Count three for account stated must be dismissed as a matter of law.

### 3. Count Eight – Violation of California Penal Code § 496

ASI argues that count eight, alleging violation of California Penal Code § 496, fails as a matter of law because it attempts to recast a contract dispute as theft, requires criminal intent that is not alleged, and focuses on conduct arising entirely outside California. *See* Dkt. No. 21 at 16-17. Penal Code § 496 authorizes treble damages where a defendant knowingly receives, conceals, or withholds stolen property. Cal. Penal Code § 496(c). Courts have cautioned that Penal Code § 496 does not extend to routine business or contractual disputes. *Siry Inv., L.P. v.*

*Farkhondehpour*, 13 Cal. 5th 333, 361-62 (2022).  The California Supreme Court has held that "[t]o prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond mere proof of nonperformance or actual falsity."  *Id.* (quoting *People v. Ashley*, 42 Cal. 2d 246, 264 (1954)).  This requirement prevents "ordinary commercial defaults" from being transformed into theft.  *Id.*

California presumes its criminal statutes do not apply extraterritorially.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014).  Courts have expressly rejected attempts to apply Penal Code § 496 to conduct occurring outside California, holding that a contractual choice-of-law provision cannot overcome the presumption.  *Dfinity USA Research LLC v. Bravick*, No. 22-cv-03732, 2023 WL 2717252, at *4-5 (N.D. Cal. Mar. 29, 2023).  For example, in *Dfinity*, the defendant allegedly retained computer equipment following the termination of his employment with the plaintiff company.  *Id.* at *1-2.  Defendant sought to dismiss at the pleading stage the claim that his retention of the computer equipment constituted theft in violation of Penal Code § 496, arguing in part that California's presumption against extraterritoriality prevented enforcement of the Penal Code against him – he resided in Michigan and had worked remotely for the plaintiff company.  *Id.* at *4-5.  The court agreed with the defendant as well as several other California courts, holding that a Penal Code § 496 claim premised on conduct occurring in Michigan could not lie against the out-of-state defendant regardless of the contract's California choice of law provision.  *Id.* at *4-5 (collecting cases).

Here, Bigge alleges that ASI withheld insurance proceeds that Tokio Marine paid in connection with the crane accident.  Compl. ¶¶ 79-82.  Those allegations, however, describe nothing more than a contractual payment dispute over ASI's obligations under the Lease.  California courts have made clear that Penal Code § 496 does not convert ordinary commercial defaults into theft.  *Siry Inv.*, 13 Cal. 5th at 361-62.  Alleged nonpayment of insurance proceeds under a lease falls squarely in that category and cannot sustain a Penal Code § 496 claim.  Further, Bigge fails to identify any facts establishing criminal intent by ASI – conclusory assertions that ASI "acted with willful and conscious disregard of the rights of others, fraudulently and with malice, . . . in conscious disregard of Bigge's rights" simply do not suffice.  Compl. ¶¶ 53, 61, 69;

United States District Court
Northern District of California

*see also Siry Inv.*, 13 Cal. 5th at 362 (requiring a plaintiff to establish criminal intent beyond mere contractual nonperformance).  Count eight fails on this basis.

Perhaps more clearly, the claim also fails because the alleged conduct arises entirely from a Texas project.  The crane was leased for use in Houston, damaged in Houston, and insured by a Montana-based lessee.  ASI is not a California company, and none of the allegedly wrongful acts occurred in California.  Under the presumption against extraterritoriality, Penal Code § 496 does not apply to out-of-state conduct, and a contractual choice-of-law clause cannot expand its reach.  *Dfinity*, 2023 WL 2717252, at *4-5.  Therefore, Bigge cannot assert a claim for violation of Penal Code § 496 against ASI.  Count eight of the Complaint must be dismissed with prejudice.

**B.      Tokio Marine's Motion to Dismiss**

Bigge brings only its ninth cause of action for declaratory relief against Tokio Marine. Tokio Marine seeks to dismiss that claim for lack of standing.  Dkt. No. 19.  The Court evaluates challenges to Article III standing under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction.  *Id.*  When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Leite*, 749 F.3d at 1121. The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012).

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'  For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing."  *TransUnion LLC v. Ramirez*, 594 U.S.

10

413, 423 (2021) (citation omitted).  To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.' "  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 339).

Here, Tokio Marine argues that, as a third party to the insurance contract between ASI and Tokio Marine (the "Policy"), Bigge has no enforceable interest in the Policy.  Because Bigge objects to Tokio Marine's proffer of the Policy, the Court discusses the matter of incorporation by reference before turning to the merits.

### 1.    Incorporation by Reference

Tokio Marine asks the Court to consider the Policy underlying Bigge's claims to be incorporated into the Complaint by reference.  *See* Goodman Decl., Ex. A (Dkt. No. 19-2).  Under the doctrine of incorporation-by-reference, the Court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Bigge opposes the Court's consideration of the Policy.  Bigge spends two pages of its opposition questioning the authenticity of the insurance policy provided by Tokio Marine.  Dkt. No. 30 at 10-12.  Bigge first challenges the policy as improperly authenticated by Tokio Marine's litigation counsel.  *See* Dkt. No. 30 at 10.  Tokio Marine responds that its national adjuster,

11

Christopher E. Miley, can and does attest that the same copy is a true and correct copy. *See* Miley Decl. (Dkt. No. 33-2). Bigge did not file an objection to the Miley Declaration. *See* Civil L.R. 7-3(d)(1). In addition to challenging the person presenting the policy, Bigge contests the policy's authenticity as potentially incomplete. Bigge avers, "Until Bigge has been able to conduct discovery as to the policy, its endorsements, and communications with and from TMAIC's representatives concerning the rights of equipment owners, Bigge is reasonably entitled to contest the authenticity and completeness of the document upon which TMAIC bases its motion." Dkt. No. 30 at 11.

The Court overrules Bigge's objection as insufficient to create a reasonable dispute as to authenticity. Where a plaintiff offers only "perfunctory challenges" that fail to raise a "reasonable dispute" as to the authenticity of a document offered for incorporation by reference, courts may overrule the objection and still consider the materials incorporated by reference for purposes of resolving a motion to dismiss. *See Dimas v. JPMorgan Chase Bank, N.A.*, No. 17-CV-05205-LHK, 2018 WL 809508, at *6 (N.D. Cal. Feb. 9, 2018) (citing *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009)). Here, Bigge challenges the authenticity of the Policy primarily based on the possibility that ASI requested an endorsement that named Bigge as a loss payee, a possibility that runs counter to Bigge's entire Complaint and specifically its theory of breach in that ASI failed to name Bigge as a loss payee or additional insured. *See* Dkt. No. 30 at 11. Bigge's argument, however, does not identify any facts in the policy that conflict with the allegations in the Complaint. Further, Bigge's argument about what could possibly be missing does not contain any facts that contradict the contents or undermine the reliability of the exhibit. Accordingly, the Court finds that Bigge fails to raise a reasonable question as to the accuracy of the Policy document proffered by Tokio Marine, and the Court overrules Bigge's objection as to authenticity. *See Dimas*, 2018 WL 809508, at *6. The Court deems the Policy incorporated into the Complaint by reference.

### 2. Bigge's Standing to Sue Tokio Marine – Generally

Bigge's only claim against Tokio Marine seeks a declaration that the insurance funds paid to ASI should have been paid to Bigge, despite Bigge not being listed on the insurance policy as

United States District Court
Northern District of California

an insured or loss payee. Bigge admits it is not an insured within the language of the policy, nor is it listed as a loss payee. *See* Compl. ¶ 16. Tokio Marine reasons that, because Bigge does not have any privity with Tokio Marine, Bigge does not have standing to raise a claim for declaratory relief. *See* Dkt. No. 19.

"The standing doctrine determines 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.' " *United States v. Lazarenko*, 476 F.3d 642, 649 (9th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Unless there exists a recognized exception, a party not in privity of contract with an insurer lacks standing to resolve rights and obligations under an insurance policy. *See Otay Land Co. v. Royal Indem. Co.*, 169 Cal. App. 4th 556, 564 (2008). Generally, third parties cannot challenge an insurer's payment to its insured. *See San Diego Housing Comm'n v. Indus. Indem. Co.*, 95 Cal. App. 4th 669, 692 (2002) ("A third party claimant cannot bring an action upon a duty owed only to the insured . . . without an assignment of the cause of action for breach of such duty."); *see also* 7A COUCH ON INS. 3d § 104:6 ("Where claimants do not have a right to sue an insurer directly, it necessarily follows that they cannot object to the insurer's performance of its obligations under the contract of insurance[.]" (footnote omitted)). A third party generally may only sue an insurer directly where there has been an assignment of rights or a final judgment against the insured. *Reynolds v. Shure*, 148 F. Supp. 3d 928, 934-35 (E.D. Cal. 2015).

Here, Bigge admits it is not an insured within the language of the policy, nor is it listed as a loss payee. *See* Compl. ¶ 16. Bigge accordingly has no rights under contract with Tokio Marine, and because the insurance proceeds to which Bigge may have rights are no longer in Tokio Marine's possession, Bigge has no legally sufficient claim against Tokio Marine. *See* Compl. ¶ 32 (stating that Tokio Marine paid ASI $1.25 million to satisfy the claim). In fact, Bigge does not attempt to argue a specific duty was owed to it by Tokio Marine, only that Bigge is generally owed the full limit of ASI's Policy, $1.5 million. Because Bigge is not a party to the Policy and lacks privity, it only has standing to sue Tokio Marine if a recognized exception applies.

Bigge argues in its opposition brief that three exceptions apply, giving rise to standing against Tokio Marine. Dkt. No. 30 at 12-20. The primary issue with these three theories is that

13

they appear nowhere in the Complaint; rather, they appear to be introduced for the first time in Bigge's brief opposing Tokio Marine's motion to dismiss. *See id.* But further, all three of these theories fail as a matter of law. The Court considers them in turn below.

### 3. Exceptions for Third Party Claim Against Insurer

Bigge argues in its opposition brief that three exceptions apply in the alternative to each other, allowing it to assert a claim against Tokio Marine: (1) Bigge possesses an equitable lien in ASI's insurance Policy; (2) Bigge possesses a trust interest in the insurance premiums paid by ASI to Tokio Marine; and (3) Bigge qualifies as a third-party beneficiary. The Court is unpersuaded.

### a. Equitable Lien

All of Bigge's claims flow from ASI's alleged failure to list Bigge on the Policy as a loss payee or additional insured, violating an alleged contractual right. Bigge's Complaint makes this clear, specifying in count one of the Complaint that ASI breached the Lease agreement between the parties by failing to obtain coverage listing Bigge on the Policy, and that the appropriate remedy is money damages. Compl. ¶¶ 32, 40. Though Bigge purports to establish that an equitable lien exists against the proceeds of the Policy, this argument ignores that an equitable lien would attach only to the insurance proceeds and would not provide standing for Bigge's claims against Tokio Marine. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 454 (1997) ("[W]here a lessor contracted to purchase insurance on behalf of both the lessor and the lessee but purchased protection for itself only, and a loss ensued for which the lessor was reimbursed, the lessee is entitled to an equitable lien on the insurance proceeds."). Even if Bigge could somehow establish it possessed an equitable lien, it acknowledges in its Complaint that the insurance proceeds were already paid out by Tokio Marine and that such proceeds are in ASI's possession. Compl. ¶ 32. Consequently, Bigge's Complaint demonstrates that its claim for recovery cannot lie with Tokio Marine under an equitable lien theory, and Bigge must instead proceed against ASI, the current alleged possessor of the proceeds.

Bigge argues that the matter of *Surrey Oaks LLC v. Evanston Insurance Company* guides the outcome here, but not only does that case involve another district court's interpretation of non-California law, the holding of that case runs contrary to the premise cited. Dkt. No. 30 at 13

14

United States District Court
Northern District of California

(citing *Surrey Oaks LLC v. Evanston Ins. Co.*, No. 4:16-CV-516-A, 2017 WL 3085861, at *2 (N.D. Tex. July 19, 2017), aff'd sub nom. *Surrey Oaks, L.L.C. v. Evanston Ins. Co.*, 728 F. App'x 314 (5th Cir. 2018)). In that case, plaintiff Surrey Oaks secured its interest to an apartment complex through two deeds of trust that required the mortgagor ("Management") to obtain insurance listing Surrey Oaks as a loss payee and additional insured on the policy. *Surrey Oaks*, 2017 WL 3085861, at *1-2. Management failed to obtain a policy with Surrey Oaks listed as a loss payee or additional insured, and when Management suffered a loss covered by its insurance, the insurer issued proceeds only to Management. *Id.* When Surrey Oaks sought to enforce the terms of its agreement with Management directly against the insurer, Evanston Insurance Company, the court held that such claims failed as a matter of law because the insurer had already issued its claim check and Surrey Oaks failed to show privity with the insurer or even provide evidence that the insurer had knowledge of the agreement it had with Management. *Id.* at 4. The same has occurred here – Tokio Marine already paid insurance proceeds to ASI, the only insured and party listed in the Policy, and Bigge has provided no evidence or legal duty under which Tokio Marine would have been obligated to issue payments to Bigge instead of its insured. Accordingly, Bigge's equitable lien theory for standing against Tokio Marine fails as a matter of law.

### b.    Constructive Trust

A claim for constructive trust is a claim to compel the transfer of property from the person wrongfully holding it to the rightful owner. *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995). Bigge avers that California precedent establishes that insurance proceeds held by a named insured are held in trust for the owner of the insured chattel. Dkt. No. 30 at 13 (citing *Ferro v. Citizens Nat'l Tr. & Sav. Bank of Los Angeles*, 44 Cal. 2d 401, 411 (1955)). The *Ferro* case, however, is inapposite – that case stands for the premise that a constructive trust is established where a named insured improperly holds insurance proceeds owed to a third-party. *Ferro*, 44 Cal. 2d at 411. Tokio Marine, to the contrary, is neither a named insured nor the holder of insurance proceeds – Bigge alleges such proceeds were already paid to ASI. Compl. ¶ 32. Bigge seems to acknowledge this by stating it is entitled to an alleged constructive trust for the

"proceeds" Tokio Marine already issued to its insured, ASI.  Dkt. No. 30 at 14.  Because Tokio Marine is not the party which holds or wrongfully acquired the insurance proceeds Bigge alleges it is owed, the constructive trust theory also fails as a matter of law.

**c.    Third-Party Beneficiary**

California codifies the third-party beneficiary exception to the privity requirement as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary."  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 922 (N.D. Cal. 2018) (quoting *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949 (2005)).

Bigge aims to establish it is a third-party beneficiary under the Policy between ASI and Tokio Marine, yet it fails to even identify the requirements necessary to be considered a third-party beneficiary under California law.  Dkt. No. 30 at 14-20.  Perhaps more importantly, Bigge fails to demonstrate it meets such requirements.  Bigge simply states it is a member of a class for whose express benefit the contract was made, without identifying any allegations in the Complaint, any portion of the Lease, or any portion of the Policy to support this assertion.  Dkt. No. 30 at 14.  Bigge alleges no facts which indicate the parties manifested intent to secure a benefit to Bigge and therefore fails to establish that it may enforce the Policy against Tokio Marine as a third-party beneficiary.

Bigge separately argues that because the Policy contains "blanket coverage," Bigge should also receive coverage from Tokio Marine.  Dkt. No. 30 at 18-19.  Bigge avers that reference to "blanket coverage" creates ambiguity in the contract that precludes resolution at the pleading stage absent further factual development.  *See* Dkt. No. 30 at 19.  Two faults arise in this reasoning.  First, by emphasizing ambiguity in the Policy, Bigge undermines its assertion of third-party beneficiary status, which requires that the contract be made expressly for the third party's benefit.  *Cf. In re Nexus 6P*, 293 F. Supp. 3d at 922.  Second, Bigge's contention that "blanket coverage"

16

under the Policy should extend to owners of contractual equipment outside of those explicitly listed in the Policy ignores the understood meaning of a specific term of art. *See* 12A COUCH ON INS. 3d § 177:74 (a blanket policy "invariably attaches to, and covers to its full amount, every item of property described in it."). Because blanket coverage applies only to items or parties explicitly listed within an insurance policy, and because Bigge is not listed in the Policy in any form, its theory of being included as a third-party beneficiary under the provision for blanket coverage fails as a matter of law. Bigge does not qualify as a third-party beneficiary and cannot establish standing to sue Tokio Marine.

In sum, Bigge lacks privity with Tokio Marine and it fails to establish any exception that would allow it to proceed with its claim for declaratory relief against Tokio Marine. Tokio Marine must be dismissed from the case.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** both motions to dismiss. The Court **DISMISSES** counts three through eight asserted against ASI because all claims fail as a matter of law. The Court **DISMISSES** count nine as asserted against Tokio Marine because Bigge lacks standing against ASI's insurer. Because counts one, two, and nine will proceed against ASI, the Court will set a case management conference via clerk's notice.

**IT IS SO ORDERED.**

Dated: May 7, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

17